IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL HUGHES<br>9616 Eden Hall Ln.<br>Philadelphia, PA 19114<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>LIVE NATION WORLDWIDE, INC.<br>d/b/a LIVE NATION<br>9348 Civic Center Dr.<br>Beverly Hills, CA 90210<br><br>　　　　Defendant. | CIVIL ACTION<br><br>No.<br><br><br>JURY TRIAL DEMANDED |

## CIVIL ACTION COMPLAINT

Plaintiff, by and through his undersigned counsel, hereby avers as follows:

### INTRODUCTION

1. This action has been initiated by Michael Hughes (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) against Live Nation Worldwide, Inc. (*hereinafter* referred to as "Defendant") for violations of the Americans with Disabilities Act ("ADA" -42 USC §§ 12101 *et. seq.*), the New Jersey Law Against Discrimination ("NJ LAD'"), and the Family and Medical Leave Act ("FMLA" - 29 U.S.C. §§ 2601 *et seq.*). As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

### JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws. There lies supplemental jurisdiction over Plaintiff's

state-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

3. This Court may properly maintain personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district, and in addition, Defendant is deemed to reside where it is subject to personal jurisdiction, rendering Defendant a residents of the District of New Jersey.

5. Plaintiff is proceeding herein under ADA and has properly exhausted his administrative remedies with respect to such claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety (90) days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

**PARTIES**

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult individual, with an address as set forth in the caption.

8. Defendant is the largest live entertainment company, operates concert promotions, venue operations, sponsorship, ticketing solutions, e-commerce, and artist management. Plaintiff

worked at one of Defendant's venues located in Camden, New Jersey known as the BB&T Pavilion.

9. At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

10. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11. In or about 2015, Plaintiff was hired by Defendant to work at one of its venues in Camden, NJ, known as the BB&T Pavilion.

12. Plaintiff was initially hired to work for Defendant as a parking/pay roll manager; however, in or about April of 2016, Plaintiff was promoted to the position of an Operations Manager.

13. As Operations Manager, Plaintiff reported to Curt Voss ("Voss"), General Manager.

14. Plaintiff has suffered from dependency-related health issues and has been previously diagnosed with a drug addiction.

15. Despite Plaintiff's aforesaid disabilities, he was still able to perform the duties of his job well with Defendant. However, Plaintiff did require a reasonable accommodation during his employment with Defendant (discussed further *infra*).

16. On or about May 23, 2017, Plaintiff notified Defendant's management – including, but not limited to, Voss – of his aforesaid disability and requested a leave of absence in order to seek treatment for his disability (a reasonable accommodation under the ADA).

17. After apprising Voss of his disability and need for a medical leave of absence (discussed *supra*), Voss sarcastically replied "great", became irritated, complained that he would now have to "explain this" to the President of Defendant, and referred to Plaintiff as a "drug addict."

18. Further, upon information and belief, after informing Voss of his disability and need for reasonable accommodations, Voss also called people from Plaintiff's former employer (some of whom had helped Plaintiff get hired by Defendant) and asked why they had not informed him that Plaintiff was a "f—cking drug addict."

19. Plaintiff took approximately two (2) days of medical leave to undergo treatment at a local rehabilitation/inpatient treatment center related to his aforesaid disability.

20. After taking approximately two days of medical leave to undergo treatment related to his disability, Plaintiff attempted to return to work (on or about May 25, 2017).

21. When attempting to return to work after his aforesaid very brief medical leave of absence, Plaintiff informed Defendant's management and Human Resources ("HR") Department – including, but not limited to, Voss and Jasmine Wideman ("Wideman") – that he was medically cleared to return to work; however, Defendant's management did not permit Plaintiff to return and told him that he needed to wait for Defendant's HR department to clear him before he could resume working.

22. At Wideman's request, Plaintiff provided medical documentation clearing him to return to work; however, Defendant still refused to allow him to resume working.

23. Between on or about May 25, 2017 and his termination on June 11, 2017 (discussed further *infra*), Plaintiff complained to Defendant's management and HR Department

4

about the discriminatory treatment he was being subjected to based on his disabilities and the fact that he was being kept out of work because of his disabilities.

24. On or about June 11, 2017 – while still on a leave of absence because Defendant refused to allow him to return to work – Wideman and Voss called Plaintiff and informed him that Defendant had terminated his employment, effective immediately.

25. Defendant's stated reason for terminating Plaintiff's employment was that he had allegedly given out his Workday system username and password to other managers.

26. Defendant's purported reason for terminating Plaintiff's employment is blatantly pretextual, as upon information and belief, Defendant's management and HR Department – including, but not limited to, Voss and Wideman – were aware that other managers had given their Workday usernames and passwords to other employees of Defendant and such individuals were not disciplined or terminated for same (like Plaintiff).

27. Plaintiff was terminated (1) in close proximity to when he informed Defendant's management and HR Department of his aforementioned health conditions and need for an FMLA-qualifying medical leave; (2) at a time when he was confiding in Defendant's management about his health conditions; (3) after refusing to allow him to return from his aforesaid medical leave of absence (despite providing medical documentation clearing him to return to work); and (4) for reasons selectively enforced against him.

**First Cause of Action**
**Violations of the Americans with Disabilities Act, as amended ("ADA")**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; [3] Hostile Work Environment)**

28. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

5

29. Plaintiff suffered from qualifying health conditions under the ADA (as amended), which (at times) affected his ability to perform some daily life activities.

30. Plaintiff requested reasonable accommodations, in the form of time off from work, so that he could care for and treat for his health conditions.

31. When Plaintiff attempted to return to work following his aforesaid medical leave of absence, Defendant refused to allow him to resume working despite having provided medical documentation clearing him to return to work.

32. While still on a forced leave of absence (because Defendant refused to allow him to return to work after being medically clearly by his doctor following his leave of absence), Plaintiff was terminated from Defendant for completely pretextual reasons.

33. Plaintiff was also treated with hostility and animosity by Defendant's management after apprising them of his aforesaid health conditions, including but not limited to treating him in a rude and demeaning manner, selectively enforcing policies against him, expressing frustration and discontent towards his health conditions and need for reasonable accommodations, and refusing to allow him to return to work.

34. Plaintiff believes and therefore avers that he was subjected to a hostile work environment because of: (1) his known and/or perceived disabilities; (2) his record of impairment; and/or (3) his requested accommodations.

35. Plaintiff also believes and therefore avers that he was forced to stay out of work despite being medically cleared to return and ultimately terminated from Defendant because of: (1) his known and/or perceived disabilities; (2) his record of impairment; (3) his requested accommodations; and/or (4) his complaints of disability discrimination.

36. These actions as aforesaid constitute violations of the ADA, as amended.

## Second Cause of Action
## Violations of the New Jersey Law Against Discrimination, as amended ("NJ LAD")
([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; [3] Hostile Work Environment)

37. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

38. Plaintiff re-asserts and re-alleges each and every allegation as set forth in Plaintiff's First Cause of Action, as such actions constitute identical violations of the NJ LAD.

39. These actions as aforesaid constitute violations of the NJ LAD.

## Third Cause of Action
## Violations of the Family and Medical Leave Act ("FMLA")
(Retaliation & Interference)

40. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

41. Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

42. Plaintiff requested leave from Defendant, his employer, with whom he had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

43. Plaintiff had at least 1,250 hours of service with Defendant during his last full year of employment.

44. Defendant is engaged in an industry affecting commerce and employs fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

45. Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

46. Defendant committed interference and retaliation violations of the FMLA by: [1] forcing Plaintiff to stay out of work and ultimately terminating his employment for requesting and/or exercising his FMLA rights; [2] forcing Plaintiff to stay out of work and ultimately terminating his employment in order to prevent him from taking further FMLA-qualifying leave; and [3] refusing to reinstate Plaintiff to his same or similar position following his FMLA-qualifying leave of absence.

47. These actions as aforesaid constitute violations of the FMLA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority.

B. Plaintiff is to be awarded punitive and/or liquidated damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

C. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress / pain and suffering);

D. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

                              Respectfully submitted,

                              **KARPF, KARPF & CERUTTI, P.C.**

By:     _____

            Ari R. Karpf, Esq.
            3331 Street Road
            Two Greenwood Square, Suite 128
            Bensalem, PA 19020
            (215) 639-0801

Dated: March 28, 2018